Case 4:23-cv-01722   Document 49   Filed on 02/05/25 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
February 05, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANICE BROWN, *et al.*, § § Plaintiffs, § § VS. § AMERICAN FIRST NATIONAL BANK, *et al.*, § § Defendants. § | CIVIL ACTION NO. 4:23-CV-01722 |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court is the defendant's, American First National Bank, et al. ("AFNB"), motion for summary judgment (Dkt. No. 35). The plaintiffs, Janice Brown and Jonathan Brown ("Browns") have filed a response to the defendant's motion (Dkt. No. 45). After reviewing the motion, the pleadings, the record, and the applicable law, the Court determines that the defendant's motion should be **GRANTED**.

**II.   FACTUAL BACKGROUND**

William and Janice Brown filed this lawsuit against American First National Bank and its Chairman, Henry Wu, alleging violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and against state law. They contend that they were subjected to racial discrimination when they attempted to establish a banking relationship with AFNB and suffered intentional infliction of emotional distress, a state law claim, at the hands of Wu, the Chairman of the Bank's Board.

On October 21, 2022, the Browns visited AFNB's Katy, Texas branch to open two accounts: a personal account and a commercial account for their business, Lee & Williams Trucking, LLC. The Browns assert that an AFNB representative explicitly stated, "we do not serve Black people at this bank. This is an Asian bank. You need to find another bank." They claim that after questioning the legality of this alleged statement, they were escorted from the premises by security.

The defendants deny this characterization of events. According to AFNB, the Browns were provided an application to open a personal account and were informed of the necessary documentation required for a commercial account. AFNB contends that the Browns' commercial account application was not approved because their business was incorporated in Wisconsin and was not registered to do business in Texas, which is a requirement under Texas law. Additionally, AFNB states that the Browns' application to open a personal account was initially denied due to a consumer report indicating prior account closures due to non-sufficient funds.

Following this initial encounter, the Browns assert that Chairman Wu personally intervened and invited them to an expensive lunch and dinner, during which he offered them a special "friends-only" loan. On or about October 25, 2022, chairman Wu approved the Browns' personal checking account application as a goodwill gesture, and the Browns successfully opened a personal account with AFNB. On January 3, 2023, the Browns applied for a $100,000 working capital loan. AFNB approved the loan on January 30, 2023, and the funds were deposited into the Browns' account on February 3, 2023.

The Browns attempted to access the loan and withdraw the entire loan of $100,000 in cash without specifying a business purpose. AFNB asserts that the Browns later made purchases inconsistent with the stated purpose of the loan, including the alleged purchase of firearms, and

when asked for an explanation, they refused to provide one. Due to these concerns, AFNB suspended and later canceled the loan.

### III.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumberger*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (internal citations omitted). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003).

## IV.     ANALYSIS & DISCUSSION

The Browns' primary argument is that AFNB violated the Civil Rights Act, i.e. the Fourteenth Amendment for failing to provide an equal opportunity i.e. a contractual right during their course of dealings. However, the law does not recognize a generalized right to a specific shopping experience as a precondition to entering into a contractual relationship. Under 42 U.S.C. § 1981 and the Fourteenth Amendment, individuals have the right to make and enforce contracts without regard to race. To prevail on a claim under this statute, a plaintiff must establish (1) the existence of a contractual relationship, (2) that they were intentionally treated differently because of their race, and (3) that such treatment interfered with their ability to contract. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006).

Neither the pleadings nor any proffered evidence presented in this case supports the view that AFNB's actions prevented the Browns from entering into a contract with AFNB. While the Browns allege that they were initially denied the opportunity to open accounts, the record demonstrates that AFNB later approved their personal accounts and, subsequently, a commercial account after they registered their business in Texas. These facts undermine the Browns' assertion that they were categorically denied the ability to contract with the AFNB. It is a fact that bank policies and regulations as well as customer conduct determine the nature and extent of bank-customer relations.

Moreover, the Browns' contention that they were denied the opportunity to access loan proceeds also lacks merit. AFNB approved their loan application and initially disbursed the funds. The withdrawal of the funds was based on AFNB's concerns regarding regulatory compliance, including the Browns' attempt to withdraw the entire loan amount in cash and their alleged use of funds for purchases inconsistent with the stated business purpose.

The Browns also allege that they were treated differently from other customers, specifically Black customers. However, the evidence and pleadings contradict this assertion. A § 1981 claim requires proof of intentional discrimination, showing that similarly situated individuals of a different race were treated more favorably. The Browns have not identified any similarly situated customers who received preferential treatment under comparable circumstances. Without such evidence, their claim fails.

Additionally, the claims against Chairman Wu also fail as a matter of law. The Browns have not identified any specific action taken by Wu that would render him personally liable. Mere allegations of his position within the Bank's hierarchy are insufficient to establish a nexus between him and the alleged wrongdoing. The record is devoid of facts showing that Wu was personally involved in, or even aware of, the incident in question. On the contrary, the evidence indicates that the decision to suspend the loan was based on banking policies and compliance concerns rather than Wu's personal animus.

Lastly, the conduct alleged in this case does not rise to the level of the extreme and outrageous behavior required to sustain an Intentional Infliction of Emotional Distress claim. The standard for such a claim is exceedingly high, requiring conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." See *Restatement (Second) of Torts § 46 (1965)*. The Browns' allegation regarding an allegedly unpleasant atmosphere and a purported lack of opportunities at the bank do not meet this standard. Furthermore, they have not presented evidence of how they suffered severe emotional distress, a necessary element of the claim. Absent such evidence, this claim fails.

For the reasons stated above, the Court finds that the Browns have failed to establish a genuine issue of material fact with respect to their claims. The alleged failure to provide a "proper

shopping atmosphere" does not alone constitute a denial of a federal constitutional right. Hence, the Browns' alleged actions that they experienced rude and unprofessional remarks, do not demonstrate that they were treated different than other customers. In fact, they received the services requested. Accordingly, the defendants' motion for summary judgment is **GRANTED**.

It is so **ORDERED**.

SIGNED on February 5, 2025, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge